UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON LEE SCROGGIN,

    Plaintiff,

    v.                          CAUSE NO. 3:20-CV-663-RLM-MGG

DANIEL DIAZ, et al.,

    Defendants.

OPINION AND ORDER

Brandon Lee Scroggin, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983, alleging claims of failure to protect, excessive force, and deliberate indifference to his serious medical needs. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Scroggin alleges a gang member punched him on February 3, 2020. ECF 3 at ¶ 4. As a result, he was moved to C-1 Dorm, a move he protested because he knew inmate F.S. lived there. Id. at ¶ 10. F.S. had threatened him several times and was the subject of a prior protective custody order. Id. at ¶ 8, 10-11. Mr Cpt. Armstrong, Sgt. Q. Livers, and Lt. Daniel Diaz escorted Mr.

Scroggin. *Id.* at ¶ 10. When he refused to go in the dorm, Lt. Diaz told him he was going in there or "we're beating your ass." *Id.* As they walked into C-1 Dorm, they passed F.S.'s cell, who told them, "He's gotta go. He can't stay here." *Id.* at ¶ 11. Mr. Scroggin tried to leave the dorm and Cpt. Armstrong, Lt. Diaz, and Sgt. Livers wrestled him to the ground and pulled him into the stairwell outside the dorm. *Id.* Lt. Diaz and Sgt. Livers were punching Mr. Scroggin while Cpt. Armstrong watched until Mr. Scroggin said, "I give. I give. Please stop. I think you broke my ribs." *Id.* Mr. Scroggin asked those three officers and dorm officer Angenea Williams to see medical and was denied. *Id.* at ¶¶11-12.

Mr. Scroggin states a claim under the Eighth Amendment for excessive force against Lt. Diaz and Sgt. Livers for punching him in the stairwell outside the doorway. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009) (quotation marks and citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Lt. Diaz and Sgt. Livers's use of force might have been a good faith effort to maintain discipline, especially given Mr. Scroggin's attempt to leave the dorm, but the complaint states a plausible Eighth Amendment claim of excessive force against them.

Mr. Scroggin states a claim against Cpt. Armstrong for failing to intervene in the beating in the stairwell. Correctional officers "who have a realistic

2

opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). As alleged in the complaint, it appears the beating lasted long enough for Armstrong to have intervened.

Mr. Scroggin states a claim for deliberate indifference to his medical needs against Lt. Diaz, Sgt. Livers, Cpt. Armstrong, and Off. Williams for not notifying medical staff that he had a medical issue or otherwise allowing him to file a medical request. Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005). Mr. Scroggin suffered a beating and says he thought his ribs were broken, yet Lt. Diaz, Sgt. Livers, Cpt. Armstrong, and Off. Williams denied him access to medical care.

After Mr. Scroggin tried to leave the dorm again at medication time, he he was put in an observation/holding cell near the squad room and continued to ask for medical attention. He told Sgt. James Henrich that he needed to see a nurse because he was in pain and his ribs were broken. Sgt. Henrich told him that he wasn't going to get him a nurse because he was just trying to check in. Mr. Scroggin states a claim upon which relief could be granted against Sgt. Henrich for deliberate indifference to his serious medical needs.

Mr. Scroggin asserts several failure-to-protect claims. "[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim can't be predicated "merely on knowledge of general risks of violence in a detention facility." Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005). And "the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." Lewis v. Richards, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Santiago v. Wells, 599 F.3d 749, 756 (7th Cir. 2010). Neither F.S. or any other inmate injured Mr. Scroggin while in C-1 Dorm that day. Without a physical injury stemming from the failure to protect, the allegations in the complaint are insufficient to state a claim. See Babcock v. White, 102 F.3d 267, 270 (7th Cir. 1996).

4

Mr. Scroggin also sues Galipeau, the prison warden. Any allegation that Warden Galipeau did n't properly supervise his employees does not state a claim because a person can't be held liable under § 1983 unless they personally contributed to the alleged violation. *See* Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's.").

For these reasons, the court:

(1) GRANTS Brandon Lee Scroggin leave to proceed against defendant Daniel Diaz and Q. Livers in their individual capacities for compensatory and punitive damages for using excessive force in the stairwell outside C-1 Dorm on February 5, 2020, in violation of the Eighth Amendment;

(2) GRANTS Mr. Scroggin leave to proceed against defendant Armstrong in his individual capacity for compensatory and punitive damages for failure to intervene in the use of excessive force in the stairwell outside C-1 Dorm on February 5, 2020, in violation of the Eighth Amendment;

(3) GRANTS Mr. Scroggin leave to proceed against defendants Daniel Diaz, Q. Livers, Armstrong, and Angenea Williams in their individual capacities for compensatory and punitive damages for deliberate indifference to his serious medical needs when they denied him access to medical care following the use of force in the stairwell outside C-1 Dorm on February 5, 2020, in violation of the Eighth Amendment;

(4) GRANTS Mr. Scroggin leave to proceed against defendant James Henrich in his individual capacity for compensatory and punitive damages for

deliberate indifference to his serious medical needs when he denied Mr. Scroggin access to medical care while in the observation cell on February 5, 2020, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES defendants Connie Byers, Coronet, and Galipeau;

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Daniel Diaz, Q. Livers, Armstrong, Angenea Williams, and James Henrich at the Indiana Department of Correction and to send them a copy of this order and the complaint (ECF 3) pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction to provide the United States Marshals Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if it has such information; and

(9) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), defendantsd Daniel Diaz, Q. Livers, Armstrong, Angenea Williams, and James Henrich to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 1, 2021

                                                  s/ Robert L. Miller, Jr.
                                                  JUDGE
                                                  UNITED STATES DISTRICT COURT